UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| VS. | ) | CASE NO. 17 CR 822 |
| | ) | |
| | ) | Hon. Edmund E. Chang |
| JOSE ACOSTA | ) | |

### DEFENDANT JOSE ACOSTA'S SUPPLEMENT TO MOTION TO QUASH ARREST

NOW COMES, defendant JOSE ACOSTA, by and through his attorney, Quinn A. Michaelis, and respectfully supplements his Motion to Quash Arrest as follows:

In responding to Mr. Acosta's and Mr. Flores' motions, the government asserts that certain facts are undisputed and that the events as alleged in the various reports establish probable cause sufficient to arrest Mr. Acosta on November 15, 2017.

To start, the government states that "Chicago police gang unit had information indicating that the Ambrose street gang used an apartment at 1923 South Peoria (a brick 3-flat building) to store weapons and drugs." (Doc. 112, pg. 3). In support of his Motion to Suppress Evidence and Statements, Mr. Flores submitted exhibit Flores 5B, a property description for the building at 1923 S. Peoria, which describes the building as having 6 units. The government's response

1

goes on to state that shortly after Mr. Flores arrived near the building, Mr. Acosta and another individual exited 1923 S. Peoria.  The government's response indicates that Mr. Acosta was carrying a black garment under his arm, which, according to the officers was concealing an item.  The government conveniently omits the fact that the second individual with Mr. Acosta also had some sort of bundle under his arm, and accompanied Mr. ACOSTA to the back Flores' minivan.  This fact is also omitted from the investigative report attached to the government's response.   The second individual can be seen clearly on the videos provided to the court previously[1]. Not only is that second individual carrying a garment under his arms as well, he runs to the van with Flores, while Mr. Acosta continues to walk at the same pace off camera.  After Mr. Acosta, Flores and the other individual return to the building, Flores returns to his vehicle and drives away.

According to the government's response, as soon as Flores drives away, he is pulled over, and after *mirandizing* Flores, Flores states "I got two choppers in the back."  Importantly, Flores does not claim to have just received these items, nor does he tell officers at that point who gave the items to him.  Further, as clear from the photograph included in the government's response, the back of Flores' minivan is full of items, and only a small section of the back compartment of the minivan is visible in the photograph.

Finally the government claims that after the police officers were informed that the firearms were recovered, that the officers then positively identified Mr.

---

[1] Also apparent in the videos previously submitted:  not ten seconds before Mr. Acosta and the other individual approach Flores, two other people are seen walking down the street with black garments under their arms as well.

2

Acosta. This is a misstatement of what the report actually states. According to the investigative report, when the officers conducted a stop on Mr. Acosta and a second individual, Officers Gallas and Brandon "positively identified ACOSTA as the individual who carried the rifles to FLORES's vehicle, and received USC from FLORES in the north gangway of 1919 S. Peoria[2], as previously stated." (See Doc. 112, Ex. A, pg. 5). According to the report, the officers only verified that Mr. Acosta was the same person they had seen earlier, not his actual identity. The reports are silent regarding when Mr. Acosta was identified and when his background was discovered by the officers. Additionally, the officers also arrested the individual who was with Mr. Acosta later in the afternoon, because the officers believed he was the second individual they had seen earlier. This individual was released without charging.

It is clear upon examination of the videos and the reports that there are multiple inconsistencies between what the officers reported and what was captured by security cameras. Most fundamental of those inconsistencies is the officers' insistence that Mr. Acosta and Flores retreated to a gangway where Flores was observed giving Mr. Acosta a stack of money. The security footage does not bear those events out. Furthermore, the emphasis on what Mr. Acosta was observed doing while remaining wholly silent that a second individual had a bundle and ran towards Flores' vehicle during this transaction further calls into question whether the officers actually observed Mr. Acosta placing anything into the vehicle.

---

[2] According to Mr. Acosta's arrest report, the activities observed in the gangway took place at 1923 S. Peoria.

3

Furthermore, this second individual is carrying his bundle on the left side of his body, which would be more readily visible to the surveillance officers than whatever Mr. Acosta's is carrying, which is on the side of his body furthest away from surveillance officers. Also implicating the officers' ability to observe or report accurately is the fact that the individual who was arrested with Mr. Acosta was later determined not to be the individual seen earlier in the day, even though the arresting officers believed they were the same person.

The thrust of the government's argument is based on their offer of proof that these officers observed Mr. Acosta carrying a rifle shaped object and placing that object in the back of Flores' van. However, due to the multitude of inconsistencies that have already been established between what the officers claim to have observed and what was actually captured on surveillance it is Mr. Acosta's position that there was no probable cause for his arrest.

WHEREFORE, Mr. Acosta respectfully requests that this Court grant him standing to challenge his arrest as illegal.

Respectfully submitted,

/s/Quinn A. Michaelis
Quinn A. Michaelis

Attorney for JOSE ACOSTA
73 W. Monroe, Suite 106
Chicago, Illinois 60601
312-714-6920

4

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2019, I electronically filed the above

DEFENDANT JOSE ACOSTA'S SUPPLEMENT TO
MOTION TO QUASH ARREST

with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on November 18, 2019.

By His Attorney,

s/ Quinn A. Michaelis

Quinn A. Michaelis
Attorney for Jose Acosta
73 W. Monroe, Suite 106
Chicago, Illinois 60601
312-714-6920